IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL HOGU,

    Plaintiff,

vs.                                                                      No. 1:12-cv-00572 MV-CG

ERIC SHINSEKI, SECRETARY
OF VETERANS AFFAIRS,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendant's *Motion for Summary Judgment*, (Doc. 32), and *Memorandum in Support of Motion for Summary Judgment* (collectively "Motion for Summary Judgment"), (Doc. 33), filed on August 19, 2013; *Plaintiff's Response In Opposition to Defendant's Motion for Summary Judgment* ("Response"), (Doc. 36), filed on September 19, 2013; and Defendant's *Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* ("Reply"), (Doc. 47), filed on November 14, 2013. United States District Judge Martha Vazquez referred Defendant's Motion for Summary Judgment to the undersigned to conduct hearings and perform any legal analysis required to recommend an ultimate disposition. Oral argument on the Motion for Summary Judgment was held on February 11, 2014, (Doc. 53). After reviewing the briefs and the record, and hearing argument from the parties, the Court recommends that Defendant's Motion for Summary Judgment be granted.

    **I.**    **Background**

Plaintiff is an African American male who began working for the New Mexico Veterans Affairs Health Care System ("NMVAHCS") on September 4, 2007. (Doc. 1 at

2; Doc. 33-1 at 1).  Initially Plaintiff began working under an excepted appointment, but on November 23, 2008, Plaintiff began a full-time permanent position as a Staff Nurse, subject to his successful completion of a two-year probationary period.  (Doc. 33-2 at 1).

Beginning in the fall of 2009, Plaintiff's supervisor Beverly Wilson, Managing Registered Nurse, observed some problems with Plaintiff's conduct.  (Doc. 33-3 at 1).  Although it was sometimes necessary for Plaintiff to make phone calls to other medical providers to clarify medication orders, Ms. Wilson observed that Plaintiff spent excessive amounts of time texting or otherwise using his cell phone; additionally, she felt that it was inappropriate for him to listen to his iPod with his earphones on.  (Doc. 36-1 at 5; Doc. 33-3 at 1).

Ms. Wilson received complaints about Plaintiff on several occasions, beginning in October 2009 and again in February, June, and July 2010.  (Doc. 33-3 at 1-3).  These complaints ranged from Plaintiff failing to complete the charting on a few of his patients to failing to order a CT to not checking on patients during his shift on two occasions; Ms. Wilson also received complaints that Plaintiff used profanity in front of his colleagues.  (Doc. 33-3 at 1-3; Doc. 33-4 at 2).  Plaintiff admits that patients and other nurses submitted complaints about his conduct, but claims that his conduct did not jeopardize a patient's safety.  (Doc. 36-1 at 3).  When Ms. Wilson spoke to Plaintiff about these complaints, Plaintiff either told her that he did not remember the incidents, or that the incidents did not happen as alleged.  (Doc. 33-3 at 1-3; Doc. 33-5 at 1-2).  At least one of the complaints that Plaintiff did not check on a patient during his shift is disputed by Ciji Arviso, a Certified Nursing Assistant; Ms. Wilson did not speak with Ms. Arviso regarding the incident.  (Doc. 36-2 at 9-10).

On July 11, 2010, Plaintiff submitted a report in which he detailed an interaction that he had with Sheila Bean, RN. (Doc. 36-2 at 11). Ms. Bean told Plaintiff that she had not given a patient his scheduled dose of insulin because "his hands were over his head." (Doc. 36-2 at 11). Plaintiff submitted a second report regarding Ms. Bean on July 15, 2010, in which he states that she did not complete her patient's admission assessment. (Doc. 36-2 at 2). On July 12, 2010, Plaintiff submitted a report in which he stated that Pam La Vigne refused to accept a patient that he assigned to her and that her behavior was abrasive. (Doc. 36-2 at 1). Plaintiff also submitted three reports on July 25, 2010, in which he notes that three patients' charts did not contain documentation for the night shift on July 24, 2010; these reports do not contain the names of the nurses on duty. (Doc. 36-2 at 3-5). The record also contains three letters from three physicians with whom Plaintiff worked attesting to his professionalism and competency. (Doc. 36-2 at 6-8). The three letters are all dated August 2010. (Doc. 36-2 at 6-8).

In July 2010, Ms. Wilson decided to bring her concerns to the Summary Review Board ("Board"), which would be convened to address her concerns and make recommendations regarding Plaintiff's continued employment with NMVAHCS. (Doc. 33-3 at 3). Diane G. Kooi, Deputy Executive Nurse at NMVAHCS, was the chairperson of the Board; Allean Bonin, Nurse Manager of the Step Down Unit, and James Michael McCarthy, Manager of the Acute Inpatient Health Unit, were also members of the Board. (Doc. 33-7 at 1). The Board received a file on Plaintiff to review, and Plaintiff was able to testify before the Board, as well as submit a written statement. (Doc. 33-8 at 2; Doc. 36-1 at 10). The Board recommended that Plaintiff be separated from his

3

employment and sustained the charges of

> "alleged deficiencies in his performance, including substandard nursing care provided to Veterans patients, such as not completing patient admission, transfer, and assessment notes, as well as not receiving or signing off on patient care orders. In addition, Mr. Hogu admitted to the use of profanity in the presence of other employees."

(Doc. 33-8 at 2). The recommendation was signed by Ms. Kooi on August 23, 2010, and on September 8, 2010, Plaintiff was notified that his employment would be terminated, effective September 22, 2010, by a letter signed by Emilie Kaye Green. (Doc. 33-9 at 3; Doc. 33-12 at 1). Ms. Green signed the letter after it was prepared by the Human Resources Department; she did not know Plaintiff.[1] (Doc. 33-9 at 2-4).

Plaintiff filed his *Complaint for Employment Discrimination on the Basis of Race and Sex* on May 25, 2012, alleging that Defendant discriminated against him on the basis of his race and sex. (Doc. 1). Defendant filed his Motion for Summary Judgment on August 19, 2013, arguing that Plaintiff was terminated for legitimate, non-discriminatory reasons and that Plaintiff has failed to demonstrate that Defendant's reasons are pretextual. (Doc. 33).

## II.     Standard of Review

### a. Summary Judgment

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of making a *prima*

---

[1] Though Plaintiff asserts that Ms. Green knew of his race because of her position and her review of the Board's decision, the only evidence he offers to support this contention is his deposition testimony. (Doc. 36 at 5) (citing Doc. 36-1 at 2). In this testimony, Plaintiff testifies that though he had never spoken to Ms. Green, his belief is based on his "impression that she would have to review all the facts of the case before just signing [termination] letter" and because "someone in her position is aware of the gender and race of all the people that are working on the floors." (Doc. 36-1 at 2). Plaintiff's contention that Ms. Green knew of his race and gender is based on his speculation and does not directly rebut Ms. Green's sworn statement that she did not know Plaintiff's race.

*facie* demonstration that there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted).  "[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment*." English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (internal citations and quotations omitted).

    b.  Title VII

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To prevail, a plaintiff must demonstrate intentional discrimination through either direct or indirect evidence.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

When deciding whether summary judgment is appropriate, a court must evaluate whether the plaintiff has set forth sufficient evidence of discrimination using the McDonnell Douglas burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under this framework, a plaintiff must establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected

class; (2) he was qualified for the position he held; (3) he was subject to an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 483-84 (10th Cir. 2006).  If the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).  If the defendant articulates a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the plaintiff to establish a genuine issue of material fact as to whether the proffered reason is pretextual.  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

In this case, the parties have assumed, for the sake of the Motion for Summary Judgment, that Plaintiff has established a *prima facie* case of discrimination and that Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff.  (Doc. 33 at 7; Doc. 36 at 9).  Thus, the only question is whether Plaintiff has demonstrated that there is a genuine issue of material fact as to whether Defendant's reason is pretextual.

### III.  Analysis

Plaintiff argues that he has shown that the reason given for his termination – poor performance and personal conduct issues while he was a probationary employee – are pretextual for three reasons.  (Doc. 36 at 9-11).  First, Plaintiff argues that Ms. Wilson provided only negative and inaccurate information about Plaintiff to the Board, leaving out crucial positive evidence.  (Doc. 36 at 10).  Second, the record contains evidence

that Plaintiff was treated differently than three similarly situated white, female employees. (Doc. 36 at 10-11). Finally, Plaintiff maintains that the timing of his termination is suspicious, in that Ms. Wilson decided to report his conduct to the Board only after Plaintiff complained of his colleagues' conduct. (Doc. 36 at 11). Defendant asserts that Plaintiff has not provided sufficiently specific evidence demonstrating that the explanation for his termination is pretextual. (Doc. 47 at 7-19).

Defendant also contends that Ms. Green, the individual who issued the letter terminating Plaintiff, was unaware of Plaintiff's race, and that she had no reason to believe that the Board's recommendation to terminate Plaintiff was based in any way on his race or gender. (Doc. 47 at 8). Plaintiff alleges that Ms. Wilson's actions were based on Plaintiff's race and/or gender and that her motives may be imputed to Defendant. (Doc. 36 at 9-10).

### a. Subordinate Bias Liability

Defendant takes the position that the Court must examine the facts as they appear to the decision maker who, in this case, was Ms. Green. (Doc. 47 at 9). Defendant asserts that "the relevant inquiry is not whether Ms. Green's reasons were wise, fair, or correct, but whether she honestly believed those reasons and acted in good faith upon those beliefs." (Doc. 47 at 9) (citing *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004)). Plaintiff, however, argues that Ms. Wilson's motives may be imputed to the employer, even if the ultimate decision maker did not have any interaction with Plaintiff. (Doc. 36 at 9-10) (citing *Ready Mixed Concrete Co. v. N.L.R.B.*, 81 F.3d 1546 (10th Cir. 1996).[2]

---

[2] Plaintiff's citation to this case does not contain a pincite. After reviewing this case, the Court assumes that Plaintiff cites this case for the proposition that the "knowledge of a supervisor is attributable to the

7

Under a theory of subordinate bias, a defendant may be held liable for a subordinate employee's prejudice even if the decision maker lacked discriminatory intent. *BCI*, 450 F.3d at 485 (citing *English*, 248 F.3d at 1011. The theory is sometimes described using the terms "cat's paw" or "rubber stamp," and comports with the agency principles incorporated into Title VII. *Id.* 484-86 (citing 42 U.S.C. § 2000e(b)). Recognizing Title VII claims brought under a subordinate bias liability theory prevents an employer from evading liability through willful blindness. *Id.* at 486. The theory allows the employer to be held responsible when a low-level supervisor without authority to actually terminate an employee is able to effectuate the employee's termination from a protected class by "recommending discharge or by selectively reporting or even fabricating information in communications with the formal decision maker." *Id.*; *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000).

A plaintiff must demonstrate that the supervisor had "more than mere 'influence' or 'input' in the decision making process" to prevail on a subordinate bias liability claim. *BCI*, 450 F.3d at 487. The biased subordinate's discriminatory reports, recommendation, or other actions must have caused the adverse employment action. Id. Furthermore, the defendant employer can avoid liability if it conducted an independent investigation into the subordinate's allegations against the employee. *Id.* at 488; *English*, 248 F.3d at 1011. The casual link between the subordinate's biased allegations and the adverse employment action is defeated because the employer did

---

employer where the employer does not negate imputing such knowledge." *Ready Mixed Concrete*, 81 F.3d at 1552 (citing *Pinkerton's, Inc.*, 295 N.L.R.D. 538, 1989 WL 224149 (1989). It is not clear why Plaintiff would cite this particular case as opposed to one of the cases that addresses, in detail, how subordinate liability bias is analyzed in a Title VII case; however, the Court will address the argument below despite the parties' lack of attention to this fundamental issue.

not rely exclusively on the subordinate's version of events.  *See BCI*, 450 F.3d at 488.  Under Tenth Circuit precedent, an employer who has asked the employee for his or her version of events may defeat the inference that an employment decision was discriminatory.  *Id.* (citing *Kendrick v. Penske Transp. Services*, Inc., 220 F.3d 1220, 1231-32 (10th Cir. 2000)).

As discussed, neither party fully addresses the theory of subordinate bias liability.  Defendant failed to address Plaintiff's contention that Ms. Wilson's motives could be imputed to Defendant in its Reply, and inaccurately argued that the Court must focus on Ms. Green's beliefs as to why Plaintiff should be terminated.  (Doc. 47 at 9).  Plaintiff, while correctly asserting that Ms. Wilson's motives may be imputed to Defendant, neglected to explain why the Board's review of Plaintiff's performance, which included hearing from Plaintiff himself, does not constitute an independent investigation into Ms. Wilson's allegations.

It is undisputed that Plaintiff was permitted the opportunity to submit written and oral statements to the Board before it made the recommendation to terminate his employment.  Although Plaintiff argues that Ms. Wilson withheld positive information about Plaintiff's performance and submitted only negative evidence to the Board, the record shows that the Board did not exclusively rely on Ms. Wilson's submissions.  Plaintiff, with his union representative, attended the meeting of the Board to provide a response, and the Board made its recommendation because "[p]atient and family complaints and testimony provided by Mr. Hogu illustrated that he had professional conduct and performance issues."  (Doc. 33-8 at 2).  The Court finds that the recommendation of the Board was made after an independent investigation into Ms.

Wilson's allegations and, therefore, any causal link between her alleged bias and Plaintiff's termination is defeated.

As discussed above, the Court found that Ms. Green did not know Plaintiff, and any suggestion that her effectuation of the Board's recommendation to terminate Plaintiff is based on discriminatory intent is extremely tenuous and unsupported by the evidence in the record. Consequently, Plaintiff's claims rely exclusively on Ms. Wilson's alleged bias which cannot be imputed to Defendant because of the Board's investigation into her allegations. Thus, the Court recommends that summary judgment be granted to Defendant.

As neither party fully briefed the subordinate bias liability theory, the Court believes it necessary to address Plaintiff's arguments that Defendant's stated reason for his termination is pretextual. For this reason, the Court evaluates Plaintiff's arguments in light of the next steps in the subordinate bias liability analysis.

      *b. Evidence of Pretext*

In order to survive summary judgment on a subordinate bias theory, a plaintiff must establish a genuine issue of material fact concerning the bias of the subordinate. *BCI*, 450 F.3d at 488. Next, the plaintiff must establish a genuine issue of material fact as to whether the reason for the adverse employment action is pretextual and has a causal relationship to the subordinate's actions. *Id*.

"A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Plotke*, 405 F.3d at 1102 (internal quotations omitted). Evidence that shows

that the defendant's articulated reason for the employment action was false can be used to demonstrate pretext.  *See id*.  A plaintiff may also be able to show pretext with "evidence that he was treated differently from other similarly situated employees who violated work rules of comparable seriousness." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (citing *Kendrick*, 220 F.3d at 1232).  "[T]he factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).

    Plaintiff maintains that Ms. Wilson intentionally left out positive information about Plaintiff's performance when giving evidence to the Board.  In particular, Plaintiff points to three letters written by physicians with whom he worked that verify his professionalism and competency and a CNA's statement that she did not know of any valid complaints about Plaintiff.  The statement from the CNA, Ms. Arviso, was written well after July 2010, when Ms. Wilson sent material to the Board.  Furthermore, although Ms. Arviso contends that Ms. Wilson did not fully investigate a patient's complaint about Plaintiff, the statement does not indicate when the complaint was made.  At best, the omission of any positive information by Ms. Wilson may imply that she had a bias against Plaintiff.  However, the Board ultimately heard Plaintiff's own testimony and reviewed the letter he submitted, which became part of the basis for their recommendation; any causal link between Ms. Wilson's actions and the Board's recommendation to terminate Plaintiff is tenuous.

    Plaintiff also argues that Ms. Wilson decided to request the review of Plaintiff's conduct only after Plaintiff submitted reports about his colleagues, and that this timing is

evidence of pretext.  Plaintiff's reports were made on July 11, 12, and 15, 2010, only days before Ms. Wilson sent her request for the Summary Review Board on July 16, 2010.  Even if Ms. Wilson was motivated by bias to request the Board's review, there is no evidence that the Board was aware of Plaintiff's reports and considered them – or their timing – in their recommendation to terminate him.

Finally, Plaintiff asserts that he was treated differently from similarly situated employees.  He alleges that Pam LaVigne, Sheila Bean, and an unidentified individual, all white, female nurses, engaged in unprofessional conduct that Ms. Wilson did not investigate.  "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Green*, 420 F.3d at 1194 (internal quotations omitted).  The court can consider work histories, company policies, and other relevant employment circumstances when determining whether employees are similarly situated.  *Id*.

The Court does not consider the allegations regarding the unidentified individual given that the reports of her behavior contain no information that would allow her to be identified and permit the Court to determine whether she is similarly situated to Plaintiff.  Moreover, Plaintiff has not provided evidentiary support for his assertion that Ms. La Vigne or Ms. Bean were supervised by Ms. Wilson.   Defendant has not contested this, however, so the Court will assume that Ms. La Vigne and Ms. Bean were in fact supervised by Ms. Wilson.  Nonetheless, the Court finds it difficult to credit Plaintiff's assertions when he has failed to support his argument with evidence or details about these individuals' supervisors, the standards governing their performances, or even their names in some cases.  Plaintiff's entire argument that was treated differently from

similarly situated employees consists of one paragraph of facts supported only by his deposition testimony and the reports he submitted about these employees. Plaintiff offers no analysis of the facts in light of legal authority. (In fact, Plaintiff does not cite any legal authority regarding similarly situated employees.)

Plaintiff alleges that Ms. LaVigne refused an assignment from the charge nurse on one occasion. There is no evidence in the record suggesting that Ms. La Vigne was a probationary employee and, therefore, she is not considered a similarly situated employee under Tenth Circuit precedent. *See Green*, 420 F.3d at 1195. Additionally, a single negative incident is not truly comparable to several documented issues over the course of nine months (from October 2009 through June 2010).

Plaintiff does allege that Ms. Bean was a probationary employee like himself, but has not provided any evidence to support this contention. He states that Ms. Bean failed to give a patient his prescribed insulin on a single occasion, conduct he asserts was more egregious than his own, but was not investigated by Ms. Wilson or the Board. Again, Plaintiff has not provided any evidentiary support for his assessment that Ms. Bean's conduct was qualitatively worse than his own or his contention that her conduct was not investigated. As discussed above with regard to Ms. La Vigne, the Court does not believe that a single incident is comparable to an ongoing pattern of unprofessional behavior.

Based on the above, Plaintiff has not established a genuine issue of material fact that Ms. Wilson was biased towards him and that her actions caused the Board to recommend that Plaintiff be terminated. Plaintiff has offered little more than conclusory, self-serving allegations in support of his argument that Ms. Wilson was biased towards

him.  Even if one could infer that Ms. Wilson was biased towards Plaintiff, the Board reviewed the patient complaints about Plaintiff and considered Plaintiff's own testimony when it found that his performance was deficient.  Based on the documented issues with Plaintiff's performance and the multi-layered review of his conduct, no reasonable factfinder could find that Defendant's proffered reason for terminating Plaintiff was "unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons."  *BCI*, 450 F.3d at 490.

## IV.     Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment, (Doc. 32), be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

*[signature]*

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE